# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHNIE KIMBROUGH, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAKEVIEW LOAN SERVICING, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff Johnie Kimbrough ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Lakeview Loan Servicing, LLC ("Lakeview") and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Lakeview for its failure to secure and safeguard his and approximately 2,537,261 other individuals' personally identifiable information ("PII"), including names, addresses, Social Security numbers, and loan numbers.

2. Lakeview is "the fourth largest mortgage loan servicer in the country."[1] As a loan servicer, the company handles the administration of loans that are issued by other entities.

3. On or about October 27, 2021, unauthorized individuals gained access to Lakeview's network systems and had access to files from the system that contained the PII of

---
[1] *About*, LAKEVIEW LOAN SERVICING, https://lakeview.com/about/ (last accessed April 5, 2022).

Plaintiff and Class members (the "Data Breach"). The unauthorized individuals had access to Lakeview's network system and the files for over a month, until December 7, 2021.

4. Lakeview owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Lakeview breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect their PII from unauthorized access and disclosure.

5. As a result of Lakeview's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all United States residents whose PII was exposed as a result of the Data Breach, which Lakeview learned of in early December 2021, and first publicly acknowledged on or about March 18, 2022, over three months after the breach was discovered.

6. Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, negligence per se, breach of fiduciary duty, and breach of implied contract, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

7. Plaintiff Johnie Kimbrough is a Georgia resident. He currently has a loan that is being serviced by Lakeview. He received a letter from Lakeview notifying him that his PII was accessed in the Data Breach. Plaintiff Kimbrough would not have used Lakeview for his loan servicing had he known Lakeview would not adequately protect his PII.

8. Defendant Lakeview Loan Services, LLC is a limited liability company formed in Delaware. Lakeview's principal place of business is located at 4425 Ponce De Leon Blvd., 5th Floor, Coral Gables, Florida 33146.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from the citizenship of all of Defendant's members, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Lakeview because Lakeview has its principal place of business in Florida.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Lakeview's principal place of business is located in Coral Gables, Florida.

## FACTUAL ALLEGATIONS

### *Overview of Lakeview*

12. Lakeview is a mortgage loan servicer that works with "more than 1.4 million customers every year."[2] The company provides loan refinancing services, as well as other administrative services to its customers throughout the life of the mortgage loan.[3]

13. In the regular course of its business, Lakeview collects and maintains the PII of its customers.

14. Lakeview's website contains a Privacy Policy which states, "To protect your personal information from unauthorized access and use, we use security measures that comply

---

[2] *Id*.
[3] *Id*.

with federal law. These measures include computer safeguards and secured files and buildings."[4]

15.     In addition, the company has an Online Privacy Notice on its website. The Online Privacy Notice states that Lakeview "recognizes the importance of keeping the personal information you provide to us private and secure."[5]

16.     Plaintiff and Class members are, or were, customers of Lakeview and entrusted Lakeview with their PII.

### *The Data Breach*

17.     On or about October 27, 2021, an unauthorized individual, or unauthorized individuals, gained access to Lakeview's network systems and had access to files on Lakeview's network systems. Lakeview did not discover that an unauthorized user had access to its systems until over a month later, in early December of 2021.

18.     Lakeview did not begin to notify government agencies or the public about the data breach until over three months after that, on or about March 18, 2022. The notice that Lakeview sent to those affected by the breach states the information that was disclosed included each customer's "name, address, loan number, and Social Security number."[6] The letter continues to state, "For some, the accessed files may also have included information provided in connection with a loan application, loan modification, or other items regarding loan servicing."[7]

---

[4] *Privacy Policy*, LAKEVIEW LOAN SERVICING, https://lakeview.com/privacy-policy/ (last accessed April 5, 2022).
[5] *Online Privacy Notice,* LAKEVIEW LOAN SERVICING, https://lakeview.com/privacy-notice/ (last accessed April 5, 2022).
[6] *Lakeview Loan Servicing Data Breach Notice to Consumers*, OFFICE OF THE VERMONT ATTORNEY GENERAL, https://ago.vermont.gov/blog/2022/03/18/lakeview-loan-servicing-data-breach-notice-to-consumers/?utm_source=rss&utm_medium=rss&utm_campaign=lakeview-loan-servicing-data-breach-notice-to-consumers (last accessed April 5, 2022).
[7] *Id*.

*Lakeview Knew that Criminals Target PII*

19. At all relevant times, Lakeview knew, or should have known, that the PII that it collected was a target for malicious actors. Despite such knowledge, Lakeview failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from cyber-attacks that Lakeview should have anticipated and guarded against.

20. It is well known among companies that store sensitive personally identifying information that sensitive information—such as the Social Security numbers ("SSNs") stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[8]

21. PII is a valuable property right.[9] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[10] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[11] It is so valuable to identity

---

[8] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[9] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), htttps://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[10] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[11] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

22. As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

23. Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[12]

24. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### *Theft of PII Has Grave and Lasting Consequences for Victims*

25. Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[13]

---

[12] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[13] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed March 1,

26. Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[14] According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[15]

27. With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[16]

---

2022).

[14] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id.*

[15] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed March 1, 2022).

[16] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed March 1, 2022).

28.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[17]

29.     Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

30.     Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (*e.g.*, name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[18]

31.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[19]

32.     It is within this context that Plaintiff and Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the

---

[17] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed Jan. 27, 2022).

[18] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[19] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

8

information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### *Damages Sustained by Plaintiff and the Other Class Members*

33. Plaintiff and Class members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

### **CLASS ACTION ALLEGATIONS**

34. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).

35. Plaintiff brings this action on behalf of himself and all members of the following Class of similarly situated persons:

> All persons living in the United States whose PII was accessed by unauthorized persons in the Data Breach, including all who were sent a notice of the Data Breach.

36. Excluded from the Class is Lakeview Loan Servicing, LLC and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

37. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. The members of the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. Lakeview reported to the Maine Attorney General that approximately 2,537,261 persons' information was exposed in the Data Breach.

39. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a. Whether Lakeview had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII from unauthorized access and disclosure;

   b. Whether Lakeview failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' PII;

   c. Whether an implied contract existed between Class members and Lakeview, providing that Lakeview would implement and maintain reasonable security measures to protect and secure Class Members' PII from unauthorized access and disclosure;

   d. Whether Lakeview breached its duties to protect Plaintiff's and Class members' PII; and

   e. Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

40. Lakeview engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

41. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Lakeview, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

42. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

43. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Lakeview, so it would be impracticable for Class members to individually seek redress from Lakeview's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

### NEGLIGENCE

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

45. Lakeview owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

46. Lakeview knew the risks of collecting and storing Plaintiff's and Class members' PII and the importance of maintaining secure systems. Lakeview knew of the many data breaches that targeted companies that stored PII, including itself, in recent years.

47. Given the nature of Lakeview's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Lakeview should have identified the vulnerabilities to their systems and prevented the Data Breach from occurring.

48. Lakeview breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

49. It was reasonably foreseeable to Lakeview that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would

result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

50. But for Lakeview's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

51. As a result of Lakeview's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

## COUNT II

### NEGLIGENCE PER SE

52. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

53. Lakeview's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Lakeview, of failing to employ reasonable measures to protect and secure PII/PHI.

54. Lakeview violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and Class members' PII/PHI and not complying with applicable industry

standards. Lakeview's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtains and stores, and the foreseeable consequences of a data breach involving PII/PHI including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

55. Lakeview's violation of Section 5 of the FTCA constitutes negligence per se.

56. Lakeview and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

57. The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA weas intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Brach.

58. It was reasonably foreseeable to Lakeview that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

59. The injury and harm that Plaintiff and Class members suffered was the direct and proximate result of Lakeview's violations of Section 5 of the FTCA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to

compensation; (ii) improper disclosure of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

## COUNT III

## BREACH OF FIDUCIARY DUTY

60. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61. Plaintiff and Class members gave Lakeview their PII in confidence, believing that Lakeview would protect that information. Plaintiff and Class members would not have provided Lakeview with this information had they known it would not be adequately protected. Lakeview's acceptance and storage of Plaintiff's and Class members' PII created a fiduciary relationship between Lakeview and Plaintiff and Class members. In light of this relationship, Lakeview must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiff's and Class Members' PII.

62. Lakeview has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII, failing to comply with data security guidelines, and otherwise failing to safeguard Plaintiff's and Class members' PII that it collected.

63. As a direct and proximate result of Lakeview's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited

to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Lakeview's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

## COUNT IV

## BREACH OF IMPLIED CONTRACT

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. In connection with receiving services from Lakeview, Plaintiff and all other Class members entered into implied contracts with Lakeview.

66. Pursuant to these implied contracts, Plaintiff and Class members provided Lakeview with their PII in order for Lakeview to service their loans, for which Lakeview is compensated. In exchange, Lakeview agreed to, among other things, and Plaintiff understood that Lakeview would: (1) provide services to Plaintiff and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; and (3) protect Plaintiff's and Class members PII in compliance with federal and state laws and regulations and industry standards.

67. The protection of PII was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Lakeview, on the other hand. Indeed,

Lakeview was clear in its Privacy Policy and Online Privacy Notice, and Plaintiff understood, that Lakeview supposedly respects and is committed to protecting customer privacy.

68. Had Plaintiff and Class members known that Lakeview would not adequately protect its customers' and former customers' PII, they would not have provided Lakeview with their PII.

69. Plaintiff and Class members performed their obligations under the implied contracts when they provided Lakeview with their PII.

70. Lakeview breached its obligations under their implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

71. Lakeview's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

72. Plaintiff and all other Class members were damaged by Lakeview's breach of implied contracts because: (i) they paid—directly or indirectly—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and/or (vi) lost time and money incurred to mitigate

and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Lakeview as follows:

  A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

  B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

  C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Lakeview from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

  D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

  E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

  F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: April 6, 2022 Respectfully submitted,

/s/ *Marc A. Wites*
Marc A. Wites
**WITES LAW FIRM**
4400 N. Federal Highway
Lighthouse Point FL 33064
Tel: (954) 570-8989
mwites@witeslaw.com
Florida Bar No. 24783

BEN BARNOW*
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL*
*aparkhill@barnowlaw.com*
RILEY W. PRINCE*
*rprince@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504

**pro hac vice* to be submitted